WO                    IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA


MAE A. TENORIO,                          )
                                         )
                        Plaintiff,       )
                                         )
            vs.                          )
                                         )
CAROLYN W. COLVIN, acting                )
Commissioner, Social Security            )
Administration,                          )
                                         )        No. 2:14-cv-0276-HRH
                        Defendant.       )
_____ )


<u>O R D E R</u>

This is an action for judicial review of the denial of disability benefits under Title XVI

of the Social Security Act, 42 U.S.C. §§ 1381-1383f.  Plaintiff has timely filed her opening

brief,[1] to which defendant has responded.[2]  Oral argument was not requested and is not

deemed necessary.

<u>Procedural History</u>

Plaintiff is Mae A. Tenorio.  Defendant is Carolyn W. Colvin, acting Commissioner

of Social Security.

_____

[1]Docket No. 20.

[2]Docket No. 21.

On June 15, 2010, plaintiff filed an application for disability benefits under Title XVI of the Social Security Act.[3]  Plaintiff alleged that she became disabled on June 1, 2010. Plaintiff alleged that she is disabled due to back surgery.  Plaintiff's application was denied initially and upon reconsideration.  After a hearing on March 29, 2012, an administrative law judge (ALJ) denied plaintiff's claim.  On June 10, 2013, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's April 9, 2012 decision the final decision of the Commissioner.  On February 13, 2014, plaintiff commenced this action in which she asks the court to find that she is entitled to disability benefits.

General Background

Plaintiff was born on March 26, 1959.  She was 53 years old at the time of the hearing. Plaintiff has a high school education and was enrolled in college at the time of the hearing. Plaintiff lives in a house with friends.  Plaintiff's past relevant work includes work as a case manager in a family shelter and a cashier/hostess.

The ALJ's Decision

The ALJ applied the five-step sequential analysis used to determine whether an individual is disabled.[4]

[3]Plaintiff had previously filed an application for disability benefits, which was denied on initial review in June 2008.  Admin. Rec. at 154.  Plaintiff did not seek further review of that denial.

[4]The five steps are as follows:

(continued...)

At step one, the ALJ found that plaintiff had "not engaged in substantial gainful activity since June 15, 2010, the application date...."[5]

At step two, the ALJ found that plaintiff had "the following severe impairments: degenerative disc disease and hepatitis C...."[6] The ALJ found that plaintiff's substance abuse was not a severe impairment because she has been "clean and sober" since 2008 and because "the record contains no objective findings that [plaintiff's] substance abuse more than

_____

[4](...continued)

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit ... her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform ... her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow ... her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

[5]Admin. Rec. at 21.

[6]Admin. Rec. at 21.

minimally affected her ability to perform basic work activities."[7]  The ALJ also found that plaintiff's gall bladder condition was not severe because "the record contains no objective findings or medical evidence that [this] condition imposed more than a minimal limitation on her ability to perform basic work activities for any continuous 12 month period[.]"[8]

At step three, the ALJ found that plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart B, Appendix 1...."[9]  The ALJ considered Listing 1.04 (disorders of the spine) and 5.05 (chronic liver disease).[10]

"Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's RFC."  Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1222-23 (9th Cir. 2009). The ALJ found that plaintiff

> has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can occasionally lift 20 pounds and frequently lift 10 pounds; sit for up to 6 hours in an 8 hour workday; stand and/or walk for approximately 6 hours in an 8 hour workday with normal breaks; frequently climb ramps or stairs; never climb ladders, ropes or scaffolds; perform frequent balancing, occasional stooping, frequent kneeling,

---

[7]Admin. Rec. at 21.

[8]Admin. Rec. at 22.

[9]Admin. Rec. at 22.

[10]Admin. Rec. at 22.

occasional crouching and frequent crawling.[11]

The ALJ gave great weight[12] to the opinions of Dr. Newton[13] and Dr. Haveliwala.[14]

The ALJ gave no weight[15] to Dr. Bai's opinion.[16]  The ALJ also gave no weight to Dr. Castro-

_____

[11]Admin. Rec. at 22.

[12]Admin. Rec. at 27.

[13]On October 28, 2010, Dr. Newton opined that plaintiff could occasionally lift 20 pounds; frequently lift 10 pounds; stand/walk for 6 hours; sit for 6 hours; was unlimited as to pushing/pulling; could never climb ladder/rope/scaffolds; could occasionally stoop and crouch; and could frequently climb ramp/stairs, balance, kneel, and crawl.  Admin. Rec. at 336-337.

[14]On March 14, 2011, Dr. Haveliwala agreed with Dr. Newton's assessment.  Admin. Rec. at 354.

[15]Admin. Rec. at 28.

[16]On October 13, 2010, Feng Bai, M.D., examined plaintiff.  Dr. Bai opined that plaintiff

> is able to carry and lift less than 10 pounds frequently and occasionally.  Standing and walking less than two hours of an eight-hour workday and sitting for less than 6 hours of an eight-hour workday.  No pushing or pulling limitations other than carrying and lifting....  She should avoid climbing ladders, but [is] able to occasionally climb a few stairs.  She should avoid stooping, kneeling, and crouching at this time.  She had no manipulative limitations in bilateral upper extremity to reach all directions, doing gross or fine manipulations.  Due to she has low back pain, for every one hour of constant standing and walking and constant sitting, she needs to change the position and also for every 30 minutes of constant walking or standing, she needs to change the position to relieve the pain.  She had no vision, communicative, or environmental limitations. She is still
>
> (continued...)

Moure's opinion.[17]

The ALJ found plaintiff's pain and symptom statements less than credible because they were not corroborated by the medical evidence; because plaintiff received only conservative treatment after her June 2010 back surgery; because the evidence was inconsistent as to why plaintiff did not take narcotic pain medication; because plaintiff did not "follow[] up on recommendations for pain management therapy, [did not] receive[] any epidural steroid injections, or use[] a TENS unit[;]" because plaintiff's statements about the extent of her limitations were inconsistent; and because of plaintiff's reported daily activities.[18]

At step four, the ALJ found that plaintiff was "capable of performing past relevant work as a case manager in social services."[19] This finding was based on the testimony of the

---

[16](...continued)
> in a recovery phase.  Her symptoms and function [are] signifi-
> cantly expected to improve in the next six months and may
> consider reevaluation at that time.

Admin. Rec. at 328.

[17]Admin. Rec. at 28.  Dr. Castro-Moure was plaintiff's neurosurgeon and his opinion is discussed below in detail.

[18]Admin. Rec. at 24-27.

[19]Admin. Rec. at 28.

vocational expert.[20]

The ALJ also made step five findings. The ALJ found that, based on the testimony of the vocational expert, plaintiff could work as a small parts assembler or a small products assembler.[21]

Thus, the ALJ concluded that plaintiff "has not been under a disability, as defined in the Social Security Act, since June 15, 2010, the date the application was filed...."[22]

<u>Standard of Review</u>

Pursuant to 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner...." The court "properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards." <u>Sandgathe v. Chater</u>, 108 F.3d 978, 980 (9th Cir. 1997). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Id.</u> (quoting <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995)). "'To determine whether substantial evidence supports the ALJ's decision, [the court] review[s] the administrative

---

[20]Admin. Rec. at 28. Malcolm Brodzinsky testified as the vocational expert. Admin. Rec. at 63-67.

[21]Admin. Rec. at 29.

[22]Admin. Rec. at 30.

record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'"  Id.  If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the Commissioner's decision.  Id.  But, the Commissioner's decision cannot be affirmed "'simply by isolating a specific quantum of supporting evidence.'"  Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)).

<u>Discussion</u>

Plaintiff first argues that the ALJ erred at step four because the ALJ misidentified her past relevant work.  The ALJ, based on the testimony of the vocational expert, identified plaintiff's past relevant work as that of a case manager in social services, DOT code 195.107-030.  DOT code 195.107-030 is the job description for a medical social worker with the following job duties:

> Assists patients and their families with personal and environmental difficulties which predispose illness or interfere with obtaining maximum benefits from medical care: Works in close collaboration with physicians and other health care personnel in patient evaluation and treatment to further their understanding of significant social and emotional factors underlying patient's health problem.  Helps patient and family through individual or group conferences to understand, accept, and follow medical recommendations.  Provides service planned to restore patient to optimum social and health adjustment within patient's capacity.  Utilizes community resources to assist patient to resume life in community or to learn to live within limits of disability. Prepares patient histories, service plans, and reports.  Participates in planning for improving health services

by interpreting social factors pertinent to development of program.  Provides general direction and supervision to workers engaged in clinic home service program activities.  Works in general hospitals, clinics, rehabilitation centers, drug and alcohol abuse centers, or related health programs.  May be employed as consultant in other agencies.  Usually required to have knowledge and skill in casework methods acquired through degree program at school of social work.

Plaintiff argues that this does not describe her job as a case worker.  Rather, plaintiff argues that her job as a case worker was a composite job.

"Work involving significant elements of two or more occupations is composite in nature and has no counterpart in the DOT."  Ferguson v. Colvin, Case No. 3:13–CV-00262–RCJ–VPC, 2014 WL 1382523, at *7 (D. Nev. April 3, 2014).  "Composite jobs often comprise a variety of duties and strength demands, and '[t]o classify an applicant's "past relevant work" according to the least demanding function of the claimant's past occupations is contrary to the letter and spirit of the Social Security Act.'"  Id. (quoting Valencia v. Heckler, 751 F.2d 1082, 1086 (9th Cir. 1985).  "'[Composite] situations will be evaluated according to the particular facts of each individual case.'"  Id. (quoting SSR 82–61).  If the claimant's past relevant work is a composite job, then at step four, the ALJ should not consider whether the claimant can perform her past relevant work as generally performed.  Thompson v. Colvin, Case No. EDCV 14–990 JC, 2014 WL 6750308, at *3 (C.D. Cal. Nov. 26, 2014).

In describing her job, plaintiff wrote that she "monitor[s] mothers and children[] in

the shelter[].  I cook dinner, breakfast for like 30 people, put away groceries ... from Costco, sweep & mop the floor, climb stairs to wak[e] up clients, sit [at] front computer to write report on my shift."[23]  Her work as a case manager plainly involved elements of two or more occupations and thus was composite work.

Because plaintiff's job as a case manager was composite work, the ALJ erred in finding that plaintiff could perform this work as "generally performed."  This error, however, was harmless because the ALJ made alternative step five findings.  See Tommasetti v. Astrue, 533 F.3d 1035, 1042 (9th Cir. 2008) ("Although the ALJ's step four determination constitutes error, it is harmless error in light of the ALJ's alternative finding at step five").

Plaintiff next argues that the ALJ erred in rejecting Dr. Castro-Moure's opinion.  On November 4, 2011, Dr. Castro-Moure opined that plaintiff could walk 1 block; could sit for less than 2 hours in an eight-hour work day; could stand/walk for less than 2 hours in an eight-hour work day; needs to be able to get up and walk around every 10-15 minutes; needs a job with a sit/stand option; needs unscheduled breaks every 20-40 minutes; could rarely lift/carry less than 10 pounds; could rarely look down, turn head left to right, look up, or hold head in static position; could never twist, stoop, crouch, or climb ladders/stairs; was limited as to handling, fingering, and reaching; and would be absent more than four days

---

[23]Admin. Rec. at 194.

per month.[24]  Dr. Castro-Moure also opined that plaintiff's pain would constantly interfere

with her ability to concentrate and pay attention.[25]

"As a general rule, more weight should be given to the opinion of a treating source

than to the opinion of doctors who do not treat the claimant."  Lester v. Chater, 81 F.3d 821,

830 (9th Cir. 1995).  "At least where the treating doctor's opinion is not contradicted by

another doctor, it may be rejected only for 'clear and convincing' reasons."  Id. (quoting

Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991)).  "[I]f the treating doctor's opinion is

contradicted by another doctor, the Commissioner may not reject this opinion without

providing 'specific and legitimate reasons' supported by substantial evidence in the record

for so doing."  Id. (quoting Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)).  Here, the

ALJ was required to give specific and legitimate reasons for rejecting Dr. Castro-Moure's

opinion as it was contradicted by the opinion of Dr. Newton.

The ALJ gave Dr. Castro-Moure's opinion no weight because "it is contradicted by

the medical evidence of record, especially his own treatment notes, which demonstrate[]

significant medical improvement and a higher level of functioning."[26]  The ALJ noted that

Dr. Castro-Moure had determined that plaintiff could go back to work in September 2010

---

[24]Admin. Rec. at 365-367.

[25]Admin. Rec. at 365.

[26]Admin. Rec. at 28.

with limitations of no heavy lifting, bending, or twisting, but that by November 2011, Dr. Castro-Moure found plaintiff had severe limitations.[27] The ALJ also noted that in November 2011, Dr. Castro-Moure "opined that [plaintiff's] back condition was stable, and recommended only conservative treatment of ongoing pain management therapy and physical therapy."[28]

Plaintiff argues that there was objective evidence supporting Dr. Castro-Moure's opinion. Plaintiff points out that in November 2011, Dr. Castro-Moure indicated that the positive objective signs supporting his opinion were reduced range of motion in the lower back and lower extremities, a positive straight leg raising test, abnormal gait, sensory loss, reflex changes, swelling, muscle spasms, muscle atrophy, and tenderness.[29]

Dr. Castro-Moure did list these objective findings on the residual functional capacity form he used. But, nowhere in his treatment notes does Dr Castro-Moure make any of these objective findings. On June 11, 2010, nine days after her surgery, plaintiff told Dr. Castro-Moure that she was "doing extremely well", that she had "only 3% pain left in her leg[,]" and that her pain was 6/10 without pain medication and much better with her pain

---

[27]Admin. Rec. at 28.

[28]Admin. Rec. at 28.

[29]Admin. Rec. at 364.

medication.[30] Dr. Castro-Moure's examination of plaintiff's back revealed that the "incision [was] well approximated with no signs of pus or discharge.  No erythema or warmth.  Her TLSO brace is fitting her, however, it needs some minor adjustments."[31]  In August 2010, although plaintiff complained of left leg pain, her MRI showed "good bony fusion" and she had 5/5 strength in all muscle groups and her "sensation [was] grossly intact throughout."[32] In October 2010, plaintiff told Dr. Castro-Moure that "she has gotten quite a bit improved since her surgery.  She no longer has any right leg pain complaints, but she still has left leg pain complaints...."[33]  On November 19, 2010, plaintiff reported that "overall, her sympto-matology has improved 60% to 70%, but some pain still remains, especially in the back, occasionally in the left hip, but no radicular pain down the legs has been present any longer after the surgery."[34]  Dr. Castro-Moure noted plaintiff "will see us again in three to four weeks [but] no further close neurological followup will be necessary after that time."[35] Plaintiff next saw Dr. Castro-Moure on November 4, 2011, when reported that  she

has ongoing postoperative low back pain that radiates into her

---

[30]Admin. Rec. at 385.

[31]Admin. Rec. at 385.

[32]Admin. Rec. at 442.

[33]Admin. Rec. at 441.

[34]Admin. Rec. at 440.

[35]Admin. Rec. at 440.

-13-

posterior side.  The patient states she can only walk about half a mile and then she has to sit down and rest for about 10-20 minutes because her left leg was numb and her right leg has pins and needles sensation.  She states her low back pain [is] brought on with prolonged standing or sitting.  The patient recently had an MRI on November 3rd, to reevaluate....  The alignment is stable, there is still L4-L5 foraminal stenosis, which is unchanged and no central stenosis or granulation tissue present.[36]

And, Dr. Castro-Moure noted that plaintiff "will just need ongoing pain management and physical therapy."[37]

Contrary to plaintiff's contention, it is not <u>post hoc</u> rationalization to consider whether these treatment notes include any objective findings.  The ALJ rejected Dr. Castro-Moure's opinion because it was not consistent with the medical evidence of record, "especially his own treatment notes[.]"[38]  These treatment notes contain no findings that plaintiff had a reduced range of motion, no positive straight leg raising tests, and no findings of abnormal gait, sensory loss, reflex changes, swelling, tenderness, muscle spasm, or muscle atrophy.  In short, there are no objective findings in Dr. Castro-Moure's treatment notes to support the limitations that Dr. Castro-Moure assessed.  Thus, the ALJ properly found that Dr. Castro-Moure's November 2011 opinion was not supported by his treatment notes.

---

[36]Admin. Rec. at 433.  Plaintiff was seen at the Neurology Clinic in May and August 2011, but not by Dr. Castro-Moure.  Admin. Rec. at 434-436.

[37]Admin. Rec. at 433.

[38]Admin. Rec. at 28.

Plaintiff also argues that the ALJ erroneously relied on the fact that Dr. Castro-Moure released her to work in August 2010, which was roughly four months post-surgery, to discount Dr. Castro-Moure's later opinion. Plaintiff argues that it is not inconsistent for Dr. Castro-Moure to have released her to work with restrictions when it was not yet clear how successful her surgery would be.

While it might not have been inconsistent for Dr. Castro-Moure to release plaintiff for work in September 2010 and then find that she had significant limitations in November 2011, that does not mean that the ALJ erred in rejecting Dr. Castro-Moure's opinion. The ALJ rejected Dr. Castro-Moure's November 2011 opinion because it was inconsistent with his treatment notes, which as discussed above, was a legitimate reason for rejecting Dr. Castro-Moure's opinion.

Plaintiff also argues that if the ALJ were going to rely on Dr. Castro-Moure's August 2010 opinion that plaintiff could return to work, then the ALJ should have found that plaintiff was precluded from twisting and stooping. In August 2010, Dr. Castro-Moure cleared plaintiff to return to work "except with no heavy lifting, bending or twisting."[39] Plaintiff argues that these limitations should have been included in her RFC and that it was error for the ALJ to only include the heavy lifting prohibition.

Plaintiff is, however, misreading the ALJ's decision. The ALJ did not rely on Dr.

---

[39] Admin. Rec. at 442.

Castro-Moure's August 2010 opinion.   Rather, the ALJ rejected Dr. Castro-Moure's

November 2011 opinion because it was inconsistent with his treatment records, including

his records from August 2010, when he released plaintiff to work.

Plaintiff next argues that the ALJ failed to account for the fact that Dr. Castro-Moure

was a treating <u>specialist</u>.  Specialists are given greater deference when evaluating medical

claims.  <u>Benecke v. Barnhardt</u>, 379 F.3d 587, 594 n.4 (9th Cir. 2004).  The ALJ did not

specifically mention that Dr. Castro-Moure was a neurosurgeon.  But, a specialist's opinion

must still be supported and must still be consistent with his treatment notes.  As discussed

above, Dr. Castro-Moure's opinion was not supported by his treatment notes.  This is not

a situation akin to that in <u>Garrison v. Colvin</u>, 759 F.3d 995 (9th Cir. 2014), the case cited by

plaintiff.  There, the ALJ discounted Dr. Wang's opinion because "'Dr. Wang provided no

rationale for his medical conclusions" and because his "findings d[id] not comport with the

improvement the claimant consistently showed when she adhered to her medication

regimen.'"  <u>Id.</u> at 1008.  The court found that "[i]n evaluating [Dr.] Wang's testimony, the

ALJ committed <u>a variety of egregious and important errors</u>[,]" including failing to

"recognize that because Wang is a specialist, his opinion is owed greater weight as a matter

of regulation[.]"  <u>Id.</u> at 1013 (emphasis added).  Here, the ALJ did not commit a variety of

errors.  Although the ALJ did not specifically recognize that Dr. Castro-Moure was a

specialist, the ALJ analyzed Dr. Castro-Moure's treatment records, considered whether his

November 2011 opinion was consistent with those records, and properly concluded that Dr. Castro-Moure's opinion was not consistent with his treatment notes.

Plaintiff also takes issue with the ALJ's observation that Dr. Castro-Moure had recommended "conservative" treatment, arguing that the ALJ cited to no authority that Dr. Castro-Moure would have had to recommend a second surgery in order for his opinion to have been credited. But plaintiff is again misreading the ALJ's decision. The ALJ did not suggest that in order for plaintiff's treatment to be considered something other than conservative, plaintiff had to undergo a second surgery. The ALJ's decision nowhere mentions another surgery. Rather, the ALJ discussed the fact that Dr. Castro-Moure recommended ongoing pain management and physical therapy, which the ALJ properly classified as conservative treatment. See Gowell v. Apfel, 242 F.3d 793, 795 (8th Cir. 2001) ("Her doctors have primarily ordered conservative treatment, such as physical therapy, pain management"); Westbrook v. Hammond, Case No. C10–5392 BHS/KLS, 2011 WL 2006603, at *9 (W.D. Wash. May 23, 2011) ("Plaintiff's medical records reflect that conservative treatment including physical therapy and pain management were provided to Plaintiff").

Plaintiff also argues that to the extent that the ALJ relied on the opinions of Dr. Newton and Dr. Haveliwala to reject Dr. Castro-Moure's opinion, this reliance was error because they were non-treating sources and their opinions were not based on actual evidence. However, an ALJ may rely on the opinion of a non-examining physician if the

opinion is "supported by other evidence in the record and [is] consistent with" that evidence.  Morgan v. Comm'r of Social Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999).  The ALJ found that Dr. Newton's and Dr. Haveliwala's opinions were supported by the medical evidence of record.[40]  The ALJ was entitled to give these opinions more weight, as long as he gave a legitimate and specific reason for rejecting Dr. Castro-Moure's opinion, which the ALJ did.

Lastly, in connection with Dr. Castro-Moure's opinion, plaintiff contends that the ALJ erred because he failed to consider that she had neuropathic pain and because he did not consider her impairments in combination.  As for plaintiff's neuropathic pain, Dr. Castro-Moure indicated that this was one of plaintiff's diagnoses.[41]  But there is nothing in Dr. Castro-Moure's treatment notes that indicate that this pain was severe enough to cause the limitations that he assessed.  As for whether the ALJ considered plaintiff's impairments in combination, it is not clear what this has to do with Dr. Castro-Moure's opinion or the ALJ's rejection thereof.  The ALJ rejected Dr. Castro-Moure's opinion because it was not consistent with his treatment notes.  This was a specific and legitimate reason to reject his opinion.

Finally, plaintiff argues that the ALJ erred in finding her pain and symptom statements less than credible.  "An ALJ engages in a two-step analysis to determine whether

_____

[40]Admin. Rec. at 27.

[41]Admin. Rec. at 364.

a claimant's testimony regarding subjective pain or symptoms is credible." <u>Garrison</u>, 759

F.3d at 1014. "'First, the ALJ must determine whether the claimant has presented objective

medical evidence of an underlying impairment which could reasonably be expected to

produce the pain or other symptoms alleged.'" <u>Id.</u> (quoting <u>Lingenfelter v Astrue</u>, 504 F.3d

1028, 1035-36 (9th Cir. 2007)). "In this analysis, the claimant is not required to show 'that

h[is] impairment could reasonably be expected to cause the severity of the symptom []he has

alleged; []he need only show that it could reasonably have caused some degree of the

symptom.'" <u>Id.</u> (quoting <u>Smolen v. Chater</u>, 80 F.3d 1273, 1282 (9th Cir. 1996)). "Nor must

a claimant produce 'objective medical evidence of the pain or fatigue itself, or the severity

thereof.'" <u>Id.</u> (quoting <u>Smolen</u>, 80 F.3d at 1281). "If the claimant satisfies the first step of this

analysis, and there is no evidence of malingering, 'the ALJ can reject the claimant's

testimony about the severity of her symptoms only by offering specific, clear and convincing

reasons for doing so.'" <u>Id.</u> at 1014-15 (quoting <u>Smolen</u>, 80 F.3d at 1281). "This is not an easy

requirement to meet: 'The clear and convincing standard is the most demanding required

in Social Security cases.'" <u>Id.</u> at 1015 (quoting <u>Moore v. Comm'r of Soc. Sec. Admin.</u>, 278

F.3d 920, 924 (9th Cir. 2002)). "In evaluating the claimant's testimony, the ALJ may use

'ordinary techniques of credibility evaluation.'" <u>Molina v. Astrue</u>, 674 F.3d 1104, 1112 (9th

Cir. 2012) (quoting <u>Turner v. Comm'r of Social Sec.</u>, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010)).

"For instance, the ALJ may consider inconsistencies either in the claimant's testimony or

between the testimony and the claimant's conduct, unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and whether the claimant engages in daily activities inconsistent with the alleged symptoms[.]" Id. (internal citations omitted).

The ALJ found plaintiff's pain and symptom statements less than credible because they were not corroborated by the medical evidence; because plaintiff received only conservative treatment after her June 2010 back surgery; because the evidence was inconsistent as to why plaintiff did not take narcotic pain medication; because plaintiff did not follow up on recommendations for pain management therapy and physical therapy; "because plaintiff's statements about the extent of her limitations have been inconsistent; and  because of plaintiff's reported daily activities.[42]  Plaintiff argues that these were not clear and convincing reasons.

As for the first reason, that plaintiff's statements were not corroborated by the medical evidence, "subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence[.]" Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).  This can only be a valid reason for finding plaintiff's statements less than credible if some of the other reasons given by the ALJ were proper.

The second reason given by the ALJ was that plaintiff received only conservative

---

[42]Admin. Rec. at 24-27.

treatment after her June 2010 back surgery.  "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."  Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) (quoting Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995)).  As discussed above, the ALJ properly found that plaintiff's treatment after her back surgery was conservative.  This was a convincing reason to find plaintiff's statements less than credible.

The third reason given by the ALJ was that the evidence was inconsistent as to why plaintiff did not take narcotic pain medication.  Plaintiff testified that she did not take narcotic pain medication because she was an addict[43] but the ALJ contends that Dr. Castro-Moure decreased plaintiff's pain medication because she was showing improvement.  However, the exhibit to which the ALJ cites does not support this contention.  This was not a convincing reason to find plaintiff's statements less than credible.

The fourth reason given by the ALJ was that plaintiff did not follow up on recommendations for pain management therapy and physical therapy.  "[I]f a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated."  Orn v. Astrue, 495 F.3d 625, 638 (9th Cir. 2007).  There is no evidence in the record that after Dr. Castro-Moure recommended pain management therapy

---

[43]Admin. Rec. at 45.

and physical therapy, plaintiff pursued these treatment recommendations.  Plaintiff has offered no explanation as to why she did not pursue these treatment options.  This was a convincing reason to find plaintiff's statements less than credible.

The fifth reason given by the ALJ was that some of plaintiff's statements about the extent of her limitations were inconsistent.  The ALJ pointed out that plaintiff testified that she could only walk one block before needing to rest, but also testified that she could walk 1/2 mile before needing to rest.[44]  The ALJ also noted that plaintiff testified that she could only stand for 20 minutes and sit for 20 to 30 minutes, but that she never reported such limitations to her treatment providers.[45]  The ALJ pointed out that plaintiff testified that she could not lift anything, but then testified that she could lift a coffee cup with two hands and that she reported that she could carry her purse all day long.[46]  The ALJ also pointed out that plaintiff testified that her hobby was dancing, but then she testified that she had only danced once since her surgery.[47]  The ALJ noted that plaintiff testified that her roommate did all the grocery shopping, but she also testified that she drives to the grocery store and Walmart and

---

[44]Admin. Rec. at 26.

[45]Admin. Rec. at 26.

[46]Admin. Rec. at 26.

[47]Admin. Rec. at 27.

uses the electric cart to go shopping.[48]  And, the ALJ pointed out that in the 2010 function report, plaintiff both stated that she could not clean at all and also that she cleans the bathroom and bedroom, does dishes, sweeps, and mops.[49]

Plaintiff argues that the ALJ misinterpreted her 2010 function report.  Plaintiff argues that she did not state that she could not do any cleaning, but rather that she "can't do any lifting or cleaning and be on my feet too long."[50]  Plaintiff also argues that the fact that she had only danced once and still referred to this as her "hobby"[51] is not an inconsistent statement.  And, defendant agreed that the ALJ erred in stating that plaintiff had never reported to her treatment providers that she was limited to 20 to 30 minutes of standing.[52]

But even if the ALJ erred as to these three examples, plaintiff made other inconsistent statements.  Plaintiff's statements about her ability to walk were inconsistent.  Plaintiff testified that she could walk less than one half mile[53] but she also testified that she tries to walk a mile, which she estimated to be four blocks, but that she takes a break after walking

---

[48]Admin. Rec. at 27.

[49]Admin. Rec. at 27.

[50]Admin. Rec. at 164.

[51]Admin. Rec. at 50 & 59.

[52]Defendant's Brief at 18 n.5, Docket No. 21.

[53]Admin. Rec. at 49.

each block.[54]  And plaintiff made other inconsistent statements.  Plaintiff testified that she

could not lift anything,[55] but she also testified that she could lift a coffee cup with both

hands[56] and she reported that she carried her purse all day, every day.[57]  Plaintiff testified

that her roommate does all the grocery shopping,[58] but she reported in her function report

that she goes grocery shopping once a month.[59]  An ALJ may consider such inconsistencies

in evaluating credibility.  Light v. Social Sec. Adm., 119 F.3d 789, 792 (9th Cir. 1997).

The sixth reason given by the ALJ was that plaintiff's reported daily activities

"undermine[d] her allegations of an inability to perform all work due to her condition."[60]

 The ALJ pointed out that plaintiff was attending college; that she testified that she gets

herself to school by driving, using BART, and the bus; that she does her homework on her

computer with 15 minute breaks; that she attends lectures at school by getting up when her

back starts hurting; that she goes to church once a week; walks a mile a day with breaks;

---

[54]Admin. Rec. at 56.

[55]Admin. Rec. at 49.

[56]Admin. Rec. at 57.

[57]Admin. Rec. at 165.

[58]Admin. Rec. at 61.

[59]Admin. Rec. at 165.

[60]Admin. Rec. at 27.

goes shopping; and cleans her bathroom slowly with breaks.[61]

However, the ALJ did not explain how these activities translate to the ability to perform full-time work.  See Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) (ALJ must explain how "the ability to perform ... daily activities translated into the ability to perform appropriate work").  This was not a convincing reason to find plaintiff's statements less than credible.

The ALJ erred as to two of the six reasons he gave for finding plaintiff's pain and symptom statements less than credible.  But, this error was harmless because the other four reasons constituted substantial evidence supporting the ALJ's ultimate conclusion that plaintiff's pain and symptom statements were less than credible.  Batson v. Comm'r of Social Security Admin., 359 F.3d 1190, 1197 (9th Cir. 2004).

## Conclusion

Based on the foregoing, the Commissioner's decision is affirmed.  The clerk of court shall enter judgment dismissing plaintiff's complaint with prejudice.

DATED at Anchorage, Alaska, this 8th day of April, 2015.

/s/ H. Russel Holland
United States District Judge

_____

[61]Admin. Rec. at 27.